IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CR-12-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SHAIONA MARIE SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

On March 30, 2020, Shaiona Marie Smith ("Smith" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 851]. On August 14, 2020, Smith filed a second pro se motion for compassionate release and exhibits [D.E. 928]. On May 6, 2021, the government responded in opposition and filed exhibits [D.E. 961]. As explained below, the court denies Smith's motions.

I.

Smith was a member of a violent subset of United Blood Nation called the Black Mob Ganstas/Donald Gee Family. On October 4, 2017, without a plea agreement, Smith pleaded guilty to violent crime in aid of racketeering and aiding and abetting. See [D.E. 374, 393]. On January 9, 2018, the court held Smith's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 453, 473, 474, 483]. After overruling an objection, the court calculated Smith's total offense level to be 26, her criminal history category to be I, and her advisory guideline range to be 63 to 78 months' imprisonment. See [D.E. 474] 1; [D.E. 483] 4–7. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced

Smith to 78 months' imprisonment. See [D.E. 473] 2; [D.E. 483] 8–23. Smith appealed [D.E. 475]. On August 29, 2018, the United States Court of Appeals for the Fourth Circuit affirmed Smith's sentence [D.E. 513, 514].

On August 13, 2019, Smith moved for a recommendation regarding length of residential reentry center placement and home confinement [D.E. 663]. On August 4, 2020, the court denied Smith's motion [D.E. 924].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's

2

application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

     (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

       that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section

---

      (C)  Family Circumstances.—

           (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

           (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

      (D)  Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Smith submitted a request for compassionate release, which the warden denied on June 29, 2020. See [D.E. 928] 3; [D.E. 928-1]. The government has not invoked section 3582's exhaustion requirement. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Smith's claim on the merits.

Smith seeks compassionate release pursuant to section 3582(c)(1)(A). In support of her request, Smith cites the COVID-19 pandemic and a methicillin-resistant staphylococcus aureus ("MRSA") outbreak at FCI Hazleton. See [D.E. 928] 4. Smith also cites the her rehabilitation efforts and her release plan. See id. at 5, 9–10; [D.E. 851] 1–2; [D.E. 928-2].

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Smith does not state that she

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

suffers from any medical condition, but the records do say she has asthma and has had it since childhood. In any event, the BOP can treat Smith's asthma. Moreover, Smith has refused the COVID-19 vaccine, which undermines any legitimate claim of fear of contracting the virus. See [D.E. 961] 3, 18–20; [D.E. 961-3]. Accordingly, reducing Smith's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Smith's asthma, Smith's rehabilitation efforts, and her release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Smith's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Smith is 26 years old and engaged in serious criminal conduct from at least 2013 until 2017. See PSR ¶¶ 10–38. Smith served as two-star general in Demetrice Devine's Donald Gee Family set of the United Blood Nation, which terrorized the Raleigh community with homicides, robberies, drug trafficking, and other criminal activity. See id. Smith engaged in violence on behalf of the gang, including beating a victim and slicing her face with a razor blade in order to promote the gang's goals. See id. ¶¶ 25, 27. Smith also worked as a prostitute to raise money for the gang. See id. ¶¶ 11, 37. Smith also possessed a stolen AR-15 and a 30-round Glock magazine. See id. ¶ 36. Moreover, before incarceration, the court ordered her detained after she repeatedly violated the terms of pretrial release. See id. ¶ 9. Although Smith has no prior criminal history and has taken

6

some positive steps while incarcerated, Smith has sustained four disciplinary infractions to date in federal prison. See [D.E. 961-2].

The court has considered Smith's exposure to COVID-19, her vaccine refusal, her rehabilitation efforts, and her release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and to vaccinate Smith, Smith's misconduct in prison, the section 3553(a) factors, Smith's arguments, the government's persuasive response, and the need to punish Smith for her serious criminal behavior, to incapacitate Smith, to promote respect for the law, to deter others, and to protect society, the court declines to grant Smith's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Smith's request for home confinement, Smith seeks relief under the CARES Act. See [D.E. 928]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). Thus, the court dismisses Smith's request for home confinement.

7

## II.

In sum, the court DENIES Smith's motions for compassionate release [D.E. 851, 928], and DISMISSES Smith's request for home confinement.

SO ORDERED. This 29 day of June 2021.

JAMES C. DEVER III
United States District Judge